**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-24-00266-001-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Sydaniel Gordon Sampson, | |
| Defendant. | |

Before the Court is Defendant Syndaniel Gordon Sampson's Motion to Dismiss Indictment (Doc. 34).  The Motion is fully briefed (Docs. 35, 36).  The Court heard oral argument for this Motion on October 3, 2024.  After considering the briefings, oral argument, and the relevant case law, the Court will deny the Motion.

**I.   BACKGROUND**

On October 23, 2023, Defendant was arrested after being seen riding a bicycle carrying an unloaded rifle in the Salt River Pima-Maricopa Indian Community reservation. Officers recognized him as a member of the East Side Los Guada Bloods, a known violent gang.  Defendant admitted to purchasing the rifle recently but had not obtained a required permit to possess the rifle.  Officers arrested Defendant without incident.

Defendant's criminal record contained five prior convictions under Arizona law. The first two relate to 2017 convictions for possession of drug paraphernalia, a Class 6 felony, in Maricopa County Superior Court.  Defendant initially received probationary terms for both convictions but served a presumptive term of one year after violating

probation. The third and fourth relate to 2018 convictions for unlawful flight from a law enforcement vehicle, a Class 5 felony, and possession and use of dangerous drugs, a Class 4 felony. Defendant was sentenced to three years of probation, and ultimately sentenced to 1.5 years on the flight count and 2.5 years on the dangerous drug charge. Lastly, the fifth relates to an aggravated DUI with a suspended or revoked license conviction from 2019. He was sentenced to ten months in custody and four years of probation, which he then violated and received 2.5 years in custody.

On February 13, 2024, a federal grand jury indicted Defendant for knowingly possessing a firearm, knowing he had been convicted of a crime punished by a term of imprisonment exceeding one year in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (*See* Doc. 1.) Defendant thereafter moved to dismiss the indictment under Federal Rule Criminal Procedure 12(b)(3)(B), arguing § 922(g)(1) is unconstitutional as applied to him under the U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). (Doc. 34.)

## II. LEGAL STANDARD

Rule 12(b) allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citation omitted). An indictment sought under a statute that is unconstitutional on its face or as applied will be dismissed. *United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007). "As-applied attacks challenge a set of rules in a statute, a subset of the statute's applications, or application of the statute to a specific set of facts." *United States v. Roberts*, 710 F. Supp. 3d 658, 663 (D. Alaska 2024) (citing *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013)). As applied challenges are the appropriate vehicle to challenge a statute if a claimed statutory defect applies to a sub-category of people. *Isaacson*, 716 F.3d at 1231.

///

## III. DISCUSSION

The Second Amendment provides "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court in *District of Columbia v. Heller* interpreted this right as an individual right, permitting "law-abiding, responsible citizens to use arms in defense of heath and home." 554 U.S. 570, 626–27, 635 (2008) (noting "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill"). "In keeping with *Heller*," the Court held in *Bruen* that the right is not confined to one's home and presumptively extends to self-defense in public places. *Bruen*, 597 U.S. at 17, 31–33. In doing so, the Court announced a new test for firearm regulations: if the Second Amendment's plain text covers an individual's conduct, the conduct is presumptively protected, and the government then carries the burden to "demonstrate that the regulation is consistent with th[e] Nation's historical tradition of firearm regulation." *Id.* at 17, 28–29 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*," which includes those that are "relevantly similar" (emphasis in original)).

The Court provided "central" considerations to effectuate this test, including whether "modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *See id.* at 29. Six Justices dispelled the notion that *Bruen* disturbed *Heller*'s holding. *See id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything we said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 81 (Kavanagh, J., joined by Roberts, C.J., concurring) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." (alteration in original) (citation omitted)); *id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) ("Like Justice KAVANAUGH, I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding.").

The Court in *United States v. Rahimi* once again reiterated that *Heller* stated, "many

such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. 1889, 1902 (2024) (quoting *Heller*, 554 U.S. at 626, 627 & n.26). But *Rahimi* addressed the application of the text, history, and tradition test from *Bruen* to 18 U.S.C. § 922(g)(8), not § 922(g)(1). *Id.* The Court applied the test to uphold the conviction of an individual who violated a temporary restraining order that prohibited him from possessing firearms and who had presented a credible threat to the physical safety of others. *Id.* The Court noted that *Heller* and *Bruen* did not undertake an exhaustive historical analysis defining the scope of the Second Amendment and rejected the government's attempt to expand the class of individuals who may constitutionally be disarmed because they are not "responsible." *Id.* at 1903 (reasoning the Court in *Heller* and *Bruen* used the term "responsible" to "described a class of ordinary citizens who undoubtedly enjoy the second amendment right" (citation omitted)); *see also id.* at 1940–41, 1947 (Thomas, J., dissenting) (reasoning the government has a mechanism to disarm those who are not "responsible" nor "law-abiding" and pose a physical threat of violence: criminal prosecution).

### a. The Parties' Arguments

Defendant argues that the Second Amendment's plain text covers his possession of the rifle and that under *Heller* and *Bruen*, there is a presumption he is among "the people" the Second Amendment protects, even as a prior felon. (Doc. 34 at 8–9.) As such, Defendant argues *Bruen* places the burden on the Government to demonstrate its application of § 922(g)(1) is consistent with the Nation's historical tradition of regulating firearms. (*Id.* at 9–10.) In response, the Government argues that *Heller* and *Bruen* reinforce that the Second Amendment protections belong to "law-abiding" citizens only, and that felons, like Defendant, are not part of "the people" it protects. (Doc. 35 at 4–6.) And the recent *Rahimi* decision further buttresses *Heller* and *Bruen* in stating prohibitions on possessions of firearms by "felons and the mentally ill" are "presumptively lawful." (*Id.* at 7.); *see Rahimi*, 144 S. Ct. at 1902 (quoting *Heller*, 554 U.S. at 626, 627 n.26). The Government further argues Ninth Circuit in *United States v. Vongxay*, 594 F.3d 1111, 1115

& n.1 (9th Cir. 2010) has categorically excluded felons from the individuals who have a fundamental right to bear arms. (*Id.* at 9–10.)

The Government goes on to offer that historically, those convicted of serious crimes, i.e., counterfeiting, forgery, or mail theft, were punished with death or total estate forfeiture. (*Id.* at 12–13.) The Government also compared drug-relation convictions to Founding-era laws penalizing possession of contraband for a historical analog, highlighting piracy and receipt of good and possession of a stolen horse as punishable by death. (*Id.* at 14–15.) The Government concludes that drug crimes are linked to violence and pose dangers beyond those historical capital crimes, and disarming such criminals would fall within what the Founders would have tolerated. (*Id.*)

In reply, Defendant argues the Ninth Circuit and the Supreme Court in *Rahimi* have rejected limiting "the people" the Second Amendment protects to "law-abiding" citizens. (Doc. 36 at 2.) Defendant further argues that *Vongxay* is irreconcilable with subsequent Supreme Court opinions, thus this Court is not bound to its categorical bar. (*Id.* at 3.) Finally, Defendant rejects the Government's proffered historical analogs as not related to firearm regulation. (*Id.* at 5–9.) Defendant also takes issue with the permanent nature the disarmament considering the Supreme Court *Rahimi* limited approval of a temporary, narrow, and focused disarmament. (*Id.*)

**b. Analysis**

Ninth Circuit law, as it stands today, does not preclude application of § 922(g)(1) to any defendant with a prior felony conviction. *United States v. Jessup*, No. CR-23-00223-001-PHX-DWL, 2024 WL 4108007, at *2 (D. Ariz. Sept. 6, 2024). The Ninth Circuit has also recognized that, although the Supreme Court has never suggested felons are not among "the people" within the plain meaning of the Second Amendment, the Court has maintained that the Second Amendment "presumptively" allows Congress to disarm persons convicted of felony offenses. *United States v. Perez-Garcia*, 96 F.4th 1166, 1180, 1186 (9th Cir. 2024) (quoting *Heller*, 554 U.S. at 626 & n.26; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010)).

The only exception to applying *Vongxay* would be a subsequent Ninth Circuit or Supreme Court holding that "undercut[s] the theory or reasoning underlying [*Vongxay*] in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). Contrary to Defendant's assertions, *Bruen* has not overruled *Vongxay* and is not irreconcilable. District courts in this Circuit have concluded as much. *See Jessup*, 2024 WL 4108007, at *2–3; *United States v. Torres*, No. 1:23-CR-00219-BLW, 2024 WL 1555399, at *3 (D. Idaho Apr. 10, 2024); *United States v. Coleman*, No. CR-23-02363-001-TUC-RCC (MSA), 2024 WL 3890710, at *2 (D. Ariz. July 29, 2024), *report and recommendation adopted sub nom.*, 2024 WL 3888700 (D. Ariz. Aug. 21, 2024); *see also United States v. Aguilar-Cruz*, No. 4:23-CR-06024-MKD, 2024 WL 2064053, at *3 (E.D. Wash. May 8, 2024) (finding *Vongxay* categorial exclusion as not defining "the people" under the Second Amendment, but rather a consideration that felons are categorically different because the Nation's historical traditional firearm regulations treats them differently (citing *Bruen*, 597 U.S. at 17)). Additionally, the Supreme Court has reiterated and avoided casting a doubt on *Heller*'s statements, dicta or not, that prohibitions against "felons and the mentally ill" are "presumptively lawful." *See Bruen*, 597 U.S. at 17; *Rahimi*, 144 S. Ct. at 1902. Similarly, the Ninth Circuit in *Perez-Garcia* has since reiterated the same regarding felons. *See* 96 F.4th at 1186; *see also United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024) (finding § 922(g)(1) facially constitutional). Therefore, the Court is bound to follow *Vongxay*, and "Ninth Circuit cases make clear that § 922(g)(1) can be constitutionally applied to *any* felon." *Jessup*, 2024 WL 4108007, at *3 (emphasis in original) (citation omitted); *United States v. Torres*, 789 F. App'x 655, 657 (9th Cir. 2020) ("[T]his court is bound under *Vongxay* and *Heller* to assume the propriety of felon firearm bans.").

Moreover, the Government has sufficiently established § 922(g)(1) is within the Nation's historical tradition of firearms regulation. As the Ninth Circuit has stated, "[its] review of the historical record similarly reveals a lengthy and extensive Anglo-American tradition of disarming individuals who are not law-abiding, responsible citizens."

*Perez-Garcia*, 96 F.4th at 1186. The Government identifies historical crimes punishable by death or estate forfeiture. Accordingly, "historical laws disarming convicts through death or estate forfeiture bolsters the conclusion that [§] 922(g)(1) fits within the Nation's historical tradition." *Anguilar-Cruz*, 2024 WL 2064053, at *7–8 (finding severe punishments for crimes and § 922(g)(1) share the broad goal of protecting the community and noting "certain individuals cannot be trusted to possess weapons due to their actual or perceived threats of lawlessness, so the government may disarm them"). Further, Defendant's attempt to find lack of similarity between the Government's proffered crimes and his injects specificity in *Bruen*'s test which it does not demand. *See* 597 U.S. at 830 (holding the test does not require a "historical *twin*"). Even so, Defendant's convictions for possession of drugs are relevantly similar to laws prohibiting possession contraband, and perhaps posing an increased risk of harm to the community. *See, e.g.*, *Smith v. United States*, 508 U.S. 223, 240 (1993) ("[D]rugs and guns are a dangerous combination.").

Defendant's argument regarding the permanency of the disarmament renders it unconstitutional as applied to him stretches *Rahimi* beyond its reach. As noted, the Supreme Court in *Rahimi* addressed a temporary disarmament of an individual who poses a physical threat of violence to others. *See* 144 S. Ct. at 1902. *Rahimi* does not command that only temporary restrictions are constitutional, and it did not "resolve whether the government may disarm an individual permanently." *See id.* at 1909–10 (Gorsuch, J., concurring). The temporal nature of a restraining order is reasonably linked to court order at issue and § 922(g)(8) addressing violations of such court orders. Therefore, as discussed, the Court is bound to follow *Vongxay* and find § 922(b)(1) can constitutionally apply to Defendant.

**IV.   CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** denying Defendant's Motion to Dismiss the Indictment (Doc. 34).

Dated this 4th day of October, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge